**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISON
CIVIL ACTION NO. 5:23-CV-172**

FLAGCO, LLC,

               Plaintiff,

    v.

BOBBY WINSTEAD and
NATIONAL YOUTH FOOTBALL
ORGANIZATION, INC.,
            Defendants.

**VERIFIED COMPLAINT**

Plaintiff FlagCo, LLC, d/b/a Gridiron Football ("FlagCo" or the "Company"), by and through undersigned counsel, for its Verified Complaint against Defendants Bobby Winstead ("Winstead") and National Youth Football Organization, Inc. ("NYFO") (collectively, "Defendants") alleges as follows:

**PRELIMINARY STATEMENT**

1.    FlagCo seeks damages in excess of $75,000 as well as injunctive and other equitable relief.

**PARTIES, JURISDICTION, AND VENUE**

2.    FlagCo is a limited liability corporation that is in the business of operating recreational and competitive youth flag football and other non-tackle football programs, which includes operating flag football leagues, camps, and tournaments.

3.    FlagCo is organized and existing under the laws of Delaware, has a principle place of business located at 4301 NE 4th Street #2006, Renton, WA 98059, and is

authorized to do business in the State of North Carolina, including, but not limited to, under the trade name Gridiron Football.

4.      Upon information and belief, Winstead is an individual who resides at 7128 Falls Glen Court, Raleigh, North Carolina 27614.

5.      Upon information and belief, NYFO is a corporation organized and existing under the laws of North Carolina and has a principal place of business located at 7128 Fall Glen Court, Suite 200, Raleigh, North Carolina 27614.

6.      Upon information and belief, Winstead is, and at all times relevant to the Verified Complaint was, the sole member and sole owner of NYFO.

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interests and costs.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

9.      Upon information and belief, NYFO is in the business of operating youth non-contact football leagues, camps, and tournaments in North Carolina, and Winstead has used social media, including Facebook, to market and connect with vendors, participants, and volunteers on NYFO's behalf and in furtherance of NYFO's operations.

10.     On January 6, 2021, FlagCo entered into an Asset Purchase Agreement ("APA") with Defendants, pursuant to which NYFO sold to FlagCo the assets and

properties NYFO used to conduct its then-existing business operating youth football leagues, camps, and tournaments in North Carolina (the "Business").

11. On January 7, 2021, the parties closed on the APA, pursuant to which FlagCo purchased all of NYFO's assets, including but not limited to, all goodwill associated with the Business, its Confidential Information, and all other rights and tangible or intangible properties or assets used in or relating to the conduct or operation of the Business.

12. NYFO's Confidential Information purchased by FlagCo, includes, but is not limited to, all trade secrets and other confidential or proprietary information and data used in or relating to the operation of the Business, NYFO's business relationships (including without limitation proposed relationships with customers, suppliers, distributors, etc.), vendor names, customer/participant lists, financial data, financial statements and sales and marketing plans.

13. Under the terms of the APA, Defendants also agreed to change NYFO's name and all assumed names on or before January 17, 2021. As of the date of this Verified Complaint, Defendants have not changed NYFO's corporate name.

14. As a condition and material inducement to FlagCo entering into the APA, and to protect the value and goodwill of the Business and investment made by FlagCo, Defendants agreed to express covenants, including but not limited to, Non-Compete Covenants ("APA Non-Compete"), Non-Solicitation Covenants ("APA Non-Solicitation"), and Confidentiality ("APA Confidentiality"), (collectively "APA Covenants").

15.     Pursuant to the APA Non-Compete, Defendants agreed that, for a five-year period from the effective date of the APA, Defendants would not, directly or indirectly (including through affiliates or family members):

(i)      engage in any capacity in any business that is the same as, or similar to, or competitive with the Business in the State of North Carolina (the "APA Territory");

(ii)     become, among other things, a member, owner, salesperson, partner, trustee, employee, agent, representative, distributor, supplier, consultant or advisor of or to, or otherwise acquire of hold any interest in, any Person[1] that engages, directly or indirectly in a business that is the same as, similar to or competitive with the Business in the APA Territory;

(iii)    permit either of the Defendants' names to be used in connection with a business that engages in any business that is the same as, similar to or competitive with the Business in the APA Territory.

16.     Pursuant to the APA Non-Solicitation, Defendants agreed that, for a five-year period, Defendants would not:

(i)      solicit, induce or attempt to solicit or induce any of FlagCo's directors, managers, officers, employees, consultants, independent contractors,

---

[1] "Person" includes, without limitation, any individual, partnership, corporation, limited liability company, joint venture, trust, association, or other entity or organization, including a governmental authority.

agents, advisors, sales representatives or other representatives to discontinue such person's relationship with FlagCo, or employ, engage or hire any such person;

(ii)    solicit, induce or attempt to solicit or induce any customer, league participant, client, consultant, independent contractor, distributor, representative, licensor, licensee, supplier or other business relation of the Business occurring during the (2) years prior to entering into the APA.

17.    Pursuant to the APA Confidentiality, Defendants agreed that, for a five-year period, Defendants would not use, directly or indirectly, any Confidential Information for their own account or for the benefit of any other person, and would not disclose any Confidential Information to any other person.

18.    Under the terms of the APA, Defendants expressly acknowledged that the territorial, time, and scope limitations set out in the APA Covenants are reasonable and properly required for the protection of FlagCo and the Business.

19.    Under the terms of the APA, Defendants expressly acknowledged that any breach of the APA Covenants would cause irreparable injury to FlagCo and that actual damages therefrom may be difficult to ascertain and, in any event, may be inadequate.

20.    In connection with the APA, Winstead terminated his employment with NYFO and entered into an Executive Employment Agreement (the "Employment Agreement") with FlagCo, which was effective January 7, 2021.

21.     The Employment Agreement provided the terms upon which FlagCo would employ Winstead as a district manager for FlagCo.

22.     As a district manager for FlagCo, Winstead was responsible for youth sports management, including but not limited to, establishing and maintaining league infrastructure, procuring field space for practices and games, hiring coaches and referees, marketing to new players, and onboarding players.

23.     As a FlagCo employee, Winstead continued to work closely with customers, vendors, and the public to evaluate their needs and to provide services to customers participating in recreational and competitive non-tackle football.

24.     As a FlagCo employee, Winstead had access to and utilized FlagCo's Confidential Information in order to fulfill his employment responsibilities to FlagCo.

25.     Under the terms of the Employment Agreement, Winstead was required to devote his best efforts and substantially all of his active business time and attention to FlagCo's business and to not engage in any outside business activity without prior written approval.

26.     The Employment Agreement defines FlagCo's "Business," in part, as:

(i)  the operation of youth flag football leagues, camps, and tournaments, and

(ii)  any business that is ancillary or related to, or an extension of, the foregoing and engaged in, directly or indirectly, by FlagCo or in active phase of development by FlagCo during Winstead's employment with FlagCo.

27.    In his capacity as a FlagCo district manager, Winstead was employed in a position of trust and confidence.

28.    Winstead's employment as a district manager was a confidential relationship with FlagCo in which he served in a fiduciary capacity to safeguard the customer relationships and intellectual property of FlagCo and its affiliates.

29.    As a condition and material inducement to FlagCo entering into the Employment Agreement, Winstead agreed to express covenants contained therein, including but not limited to, Non-Compete Covenants ("Employment Non-Compete"), Non-Solicitation Covenants ("Employment Non-Solicitation"), and Confidentiality ("Employment Confidentiality"), (collectively, "Employment Covenants").

30.    Pursuant to the Employment Non-Compete, Winstead agreed that, during his employment and for a period of eighteen months following his termination or resignation, subject to automatic extension by one day for each day that Winstead is in violation of the Employment Covenants, Winstead would not:

>    (i)    engage, in any capacity in any business which is the same as, similar to, or competitive with the Business;

>    (ii)    own, manage, control or participate in the ownership, management or control of, or render services directly or indirectly related to, any Person engaged in the Business or any other activities that compete with FlagCo;

(iii)   induce, request or request any employee, consultant officer, manager or director of FlagCo to terminate any such relationship with the Company;

(iv)   employ, cause to be employed, or assist in or solicit the employment of any employee, consultant, officer or director of the Company while any such person is providing services to the Company or within six (6) months after any such person ceases providing services to the Company or any other member of the Company or Company Group.

(v)   solicit, divert or appropriate, or assist in or attempt to solicit, divert or appropriate, or otherwise accept any business from, any Customer, Prospective Customer, or supplier of the Company with which Executive had contact within the twelve (12) month period immediately prior to the Termination Date, for the purpose of competing with the Business; or

(vi)   take any action that disrupts or in any way interferes with the FlagCo's relationship with any customer or prospective customer.

31.   In signing the Employment Agreement, Winstead expressly acknowledged that the Employment Covenants are reasonable and necessary, are valid and enforceable, and do not impose a greater restraint than necessary to protect FlagCo's legitimate business interests.

32.     Under the terms of the Employment Agreement, Winstead expressly acknowledged that the Business is intensely competitive and that, because Winstead's services to FlagCo are unique and because he has access to Confidential Information, money damages are an inadequate remedy for any breach of the Employment Agreement.

33.     Under the terms of the Employment Agreement, Winstead expressly agreed that FlagCo would be entitled to specific performance and/or injunctive relief to enforce or prevent any violation of the Employment Agreement.

34.     FlagCo employed Winstead from January 7, 2021 until November 3, 2022. While employed with FlagCo, Winstead was FlagCo's top executive in North Carolina, responsible for operating youth football leagues, camps, tournaments, and related activities throughout the state.

35.     On November 3, 2022, Winstead sent an email to Todd Cadwallader, Senior Vice President of Operations & Strategic Partners, resigning as district manager for FlagCo, without providing advance notice. ("Resignation Email").

36.     Winstead blind copied several employees of FlagCo in his Resignation Email, including but not limited to employees who were FlagCo's top executives in Florida, Wisconsin, Arizona, and Texas.

37.     Prior to sending the Resignation Email, Winstead represented to Todd Cadwallader that he was aware of, but did not intend to honor, the Employment Covenants and APA Covenants.

38. On or about February 3, 2023, FlagCo became aware that Winstead was directly competing by operating flag football leagues around North Carolina in direct violation of the APA and Employment Agreement.

39. Winstead's social media accounts indicate that, at least as early as August 2, 2022--while Winstead was still employed with FlagCo--Winstead was marketing, advertising, operating, and engaging in recreational and competitive youth flag football programs, tournaments, and clinics in North Carolina under the name 7on7 Football ("the Competitive Business").

40. Upon information and belief, Defendants are marketing and advertising the Competitive Business, as well as recruiting customers and/or participants, through social media and the following domain: https://7on7fb.com (the "Website").

41. The Website currently advertises that the Competitive Business has locations in at least eleven locations in North Carolina and that its "7 on 7 Football Spring League" is running from March 25, 2023 through May 20, 2023.

42. The Website provides that the "7 on 7 Football Spring League" is available in the following North Carolina locations: North Raleigh/Wake Forest, West Raleigh (Brier Creek), Knightdale, Garner, Apex/Cary, Durham, Greenville, and Winston Salem.

43. FlagCo, whether doing business as Gridiron or otherwise, has no association with the Website. FlagCo has never authorized Defendants' use of the Website in association with FlagCo's Business.

44.     On August 2, 2022, by and through a Facebook account with the name "7 on 7 FB Raleigh West," Winstead began advertising, marketing, and providing registration for customers to participate in a Spring flag football league in Raleigh, North Carolina. Winstead provided that customers could register through the Website.

45.     Winstead previously utilized the same Facebook page referenced above to advertise, market, and provide registration information in association with Gridiron Football, the trade name that FlagCo uses for its business in North Carolina.

46.     Upon information and belief, Winstead is using a Twitter account, with the name Coach Bob Winstead and handle @bwinstead, to advertise, market, and provide a link for customers to register for the "7 on 7 Football Spring League" at the Website.

47.     Upon information and belief, on October 19, 2022, Winstead advertised on the aforementioned Twitter account that NYFO would be sponsoring and/or operating a 7 on 7 football league in Spring 2023.

48.     Upon information and belief, Winstead is using a Twitter account, with the name 7on7 Championship and handle @7on7Champ, to advertise, market, and provide a link for customers to register for the "7 on 7 Football Spring League" through the Website. The 7 on 7 Championship Twitter account page also provides a direct link to the Website.

49.     Upon information and belief, Winstead is using a Twitter account, with the name 7on7 Football and handle @NYFOCorporate, to advertise, market, and provide a link for customers to register for the "7 on 7 Football Spring League" through the Website. The 7 on 7 Football Twitter account page also provides a direct link to the Website.

50.     Upon information and belief, the Twitter accounts referenced above have posted and/or embedded videos from FlagCo's former customers and/or prospective customers, as well as a FlagCo former employee, promoting "Coach Winstead's" 7 on 7 Football Spring League and providing that customers can register through the Website.

51.     Upon information and belief, Winstead is marketing and operating and/or engaging in the Competitive Business by and through, and in association with, NYFO.

52.     Winstead has referenced NYFO, and used NYFO's business logo, in social media posts when advertising, marketing, and providing customers with registration information to participate in football leagues provided through the Competitive Business.

53.     Winstead's marketing and sales of services to FlagCo's customers directly benefit Defendants.

54.     Upon information and belief, Defendants are using FlagCo's Confidential Information, and assets that NYFO sold to FlagCo, to solicit and/or divert FlagCo's customers and prospective customers.

55.     Upon information and belief, Defendants have solicited, for the benefit of the Competitive Business and Defendants, FlagCo. vendors, consultants, representatives, and/or employees, in violation of the APA and Employment Agreement.

56.     Upon information and belief, Defendants employ and/or obtain services from former FlagCo employees in the Competitive Business, in violation of the APA and Employment Agreement.

57.     Winstead has used FlagCo's business relationships, including but not necessarily limited to those FlagCo purchased under the APA, to his own advantage and to FlagCo's detriment by directing business away from FlagCo and to Defendants and/or the Competitive Business.

58.     Upon information and belief, Winstead is using and/or disclosing FlagCo's Confidential Information, including but not limited to information regarding FlagCo's customers and prospective customers, to market and operate and/or engage in the Competitive Business.

59.     Winstead is fraudulently misrepresenting to FlagCo customers, prospective customers, and the public that Winstead is operating and/or engaging in the same business that he did while employed with FlagCo.

60.     Specifically, Winstead represents to FlagCo customers and the public that 7on7 Football is in its 15th consecutive year of operating and providing its services to the public, despite the fact that Winstead provided the services to FlagCo customers and the public through FlagCo in 2021 and 2022.

61.     Winstead is using social media accounts he previously utilized to market and provide FlagCo's services to market and provide services for the Competitive Business.

62.     As a result of Defendants' misconduct, as described herein, FlagCo is currently unable to effectively advertise and operate its business in North Carolina.

63.     Upon information and belief, Defendants have already registered youth participants for the Spring flag football league, in association with the Competitive Business, which league ends on or about May 31, 2023.

64.     In consideration of the public interest, and in order to avoid disrupting youth participation in the sport, FlagCo will not seek immediate injunctive relief to enjoin Defendants from operating the Spring league but seeks an injunction to prevent Defendants from operating any Business in violation of the Employment Agreement or the APA thereafter.

65.     FlagCo seeks disgorgement and the value of benefit Defendants received in their operation and/or engagement in the Competitive Business from January 7, 2021 through May 31, 2023.

66.     FlagCo seeks injunctive relief to enjoin Defendants from competing with FlagCo from May 31, 2023 forward, until such time that the APA Covenants and Employment Covenants expire, including extending the time periods of their restrictions in accordance with their terms.

67.     In the alternative, to the extent that Winstead is an employee or offering services to the Competitive Business, as opposed to managing and/or operating the Competitive Business, FlagCo seeks immediate injunctive relief to enjoin Winstead from being an employee of and/or providing services to the Competitive Business.

68.     FlagCo paid Winstead a substantial salary and other compensation while Winstead was diverting business from FlagCo to the Competitive Business. In equity, and

based on Winstead's conduct as alleged herein, Winstead should be compelled to disgorge to FlagCo all compensation and benefits he received while acting in violation of his duties and obligations to FlagCo.

69.     FlagCo is entitled to indemnification from Defendants under Section 6.02 of the APA.

**FIRST CAUSE OF ACTION:**
**BREACH OF CONTRACT**
(As Against Winstead and NYFO)

70.     FlagCo repeats and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

71.     The APA is a valid and enforceable contract.

72.     Defendants, in engaging in the conduct described above, breached the APA and APA Covenants, including, but not limited to, by operating and/or engaging in the Competitive Business in North Carolina.

73.     Defendants' violations of the APA and Employment Agreement are damaging FlagCo in at the least the following ways:

(i)      Defendants are diverting sales and income away from FlagCo and to the Competitive Business;

(ii)     Defendants are damaging FlagCo's relationships with its customers and prospective customers;

(iii)    Defendants are damaging FlagCo's other business relationships;

(iv)     Defendants are impairing FlagCo's goodwill; and

(v)     Defendants are interfering with FlagCo's ability to operate its business;

**SECOND CAUSE OF ACTION:**
**BREACH OF CONTRACT**
(As Against Winstead)

74.     FlagCo repeats and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

75.     Winstead, in engaging in the conduct described above, breached the Employment Non-Compete and the Employment Agreement, including, but not limited to, by operating and/or engaging in the Competitive Business in North Carolina.

76.     Winstead's breach of the Employment Agreement and Employment Covenants is damaging FlagCo in at the least the following ways:

(i)     Winstead is diverting sales and income away from FlagCo and to the Competitive Business;

(ii)    Winstead is damaging FlagCo's relationships with its customers and prospective customers;

(iii)   Winstead is damaging FlagCo's other business relationships;

(iv)    Winstead is impairing FlagCo's goodwill; and

(v)     Winstead is interfering with FlagCo's ability to operate its business.

### THIRD CAUSE OF ACTION:
### BREACH OF FIDUCIARY DUTY
(As Against Winstead)

77.    FlagCo repeats and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

78.    Winstead held a position of trust and confidence with FlagCo.

79.    Winstead owed FlagCo a fiduciary duty of care, which he violated by leveraging FlagCo's relationships with its customers for his own gain through the Competitive Business.

80.    FlagCo was damaged by Winstead's breach of fiduciary duty, as described herein.

### FOURTH CAUSE OF ACTION:
### CONSTRUCTIVE FRAUD
(As Against Winstead)

81.    FlagCo repeats and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

82.    Winstead held a position of trust and confidence with FlagCo.

83.    Winstead took advantage of this position of trust to hurt FlagCo by leveraging FlagCo's relationships with its customers, Confidential Information, and assets FlagCo purchased from NYFO for his own gain through the Competitive Business.

84.    FlagCo was damaged by Winstead's conduct, as described herein.

### FIFTH CAUSE OF ACTION:
### UNFAIR AND DECEPTIVE TRADE PRACTICES
(As Against Winstead and NYFO)

85.     FlagCo repeats and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

86.     Defendants committed unfair and deceptive acts in violation of N.C. Gen. Stat. § 75-1.1 *et seq.*, including but not limited to by representing to FlagCo customers and prospective customers that they could obtain the same products and services from the Competitive Business that they otherwise would have obtained from FlagCo, while concealing from customers and the public that the Competitive Business was not the same as the Business operated by FlagCo.

87.     Defendants' actions were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and to FlagCo.

88.     Defendants' actions proximately caused damage to FlagCo, as described herein.

89.     Defendants' formation of a competing business constitutes substantial aggravating circumstances beyond the purview of a breach of contract claim.

### **PRAYER FOR RELIEF**

Wherefore, FlagCo prays for judgment as follows:

a.      That FlagCo be awarded compensatory damages and any pre-judgment and post-judgment interest to the full extent allowed under applicable law;

b.     That FlagCo be awarded treble damages under N.C. Gen. Stat. §75-1.1. *et seq*.

c.     That Defendants be ordered to pay all costs and attorney's fees associated with this action;

d.     That the Court impose a constructive trust with respect to all money and other property received by Defendants as a result of their unlawful conduct, which constructive trust shall be applicable to all assets of Defendants and their proceeds, and all property and assets purchased with assets or proceeds or of said assets;

e.     A preliminary injunction, and upon final hearing, a permanent injunction, enjoining Winstead and NYFO, as well as their agents, employees and any persons acting in concert with them, from breaching their contractual obligations under the Asset Purchase Agreement;

f.     A preliminary injunction, and upon final hearing, a permanent injunction, enjoining Winstead and his agents, employees, and any persons acting in concert with him, from breaching his post-employment contractual obligations under the Employment Agreement;

g.     That FlagCo be granted such other and additional relief as the Court deems just and proper.

Respectfully submitted, this the 4th day of April, 2023

NEXSEN PRUET, PLLC

_s/_ Michelle C. Prendergast
Bridget Blinn-Spears
N.C. Bar No. 43636
Michelle C. Prendergast
N.C. Bar No. 52352
4141 Parklake Ave, Suite 200
Raleigh, North Carolina 27612
Telephone: 919.678.7593
Facsimile: 919.890.4547
E-Mail: bblinn-spears@maynardnexsen.com
        mprendergast@maynardnexsen.com

*ATTORNEYS FOR PLAINTIFF*

## VERIFICATION

Personally appeared before me, Gene Scheurer, who, being duly sworn, says that he is the Corporate Executive Officer of FlagCo, LLC, the Plaintiff in the foregoing action; that he has read the foregoing Verified Complaint; that the statements contained therein are true to the best of his knowledge except those stated to be based upon information and belief, as to which he believes such matters to be true.

Name: GENE  SCHEUREN

Title: CEO

SWORN and subscribed to before me this 21 day of MArVN, 2023

Notary Public for DuVal County

My commission expires:
12/4/2026

VALERIE WALLRATH
Notary Public - State of Florida
Commission # HH 337665
My Comm. Expires Dec 4, 2026
Bonded through National Notary Assn.