IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-172-D

FLAGCO, LLC,                        )
                                    )
                Plaintiff,          )
                                    )
        v.                          )            **ORDER**
                                    )
BOBBY WINSTEAD, and                 )
NATIONAL YOUTH FOOTBALL             )
ORGANIZATION, INC.,                 )
                                    )
                Defendants.         )

On April 4, 2023, FlagCo, LLC, ("FlagCo," "Gridiron," or "plaintiff") filed a verified

complaint against Bobby Winstead ("Winstead") and National Youth Football Organization, Inc.

("NYFO") (collectively "defendants") alleging breach of contract, breach of fiduciary duty,

constructive fraud, and unfair and deceptive trade practice claims [D.E. 1]. On July 3, 2023, Bobby

Winstead and NYFO moved to dismiss [D.E. 9] and filed a memorandum in support [D.E. 9-1]. On

July 24, 2023, FlagCo responded in opposition [D.E. 10]. On August 8, 2023, defendants replied

[D.E. 13].

Defendants argue that this court lacks subject-matter jurisdiction because FlagCo lacks

standing to bring these claims and fails to plead the amount-in-controversy requirement for diversity

jurisdiction [D.E. 9-1] 3. Alternatively, defendants argue that FlagCo fails to state a claim upon

which relief can be granted for breach of contract, breach of fiduciary duty, constructive fraud, and

unfair and deceptive trade practices [D.E. 9-1] 8. As explained below, the court has subject-matter

jurisdiction and dismisses without prejudice FlagCo's breach of fiduciary duty, constructive fraud,

and unfair and deceptive trade practices claims for failure to state a claim upon which relief can be granted.

I.

FlagCo operates recreational and competitive youth flag football and other non-tackle football programs, including flag football leagues, camps, and tournaments. See Compl. [D.E. 1] ¶ 2. FlagCo is organized and exists under Delaware law, has its principal place of business in Washington, and is authorized to do business in North Carolina under the trade name Gridiron Football. See id. at ¶ 3. Bobby Winstead is a North Carolina resident and was the sole owner of NYFO. See id. at ¶¶ 4, 6. NYFO is a corporation organized and existing under the laws of North Carolina with its principal place of business in Raleigh, North Carolina. See id. at ¶ 5. For decades, Winstead has served as a youth football coach in North Carolina. See [D.E. 9-1] 2. Winstead started NYFO to provide opportunities for young players to participate in spring 7-on-7 leagues in the Raleigh area. See id. NYFO operates youth non-contact football leagues, camps, and tournaments in North Carolina, and Winstead has promoted the organization and its offerings through social media. See Compl. ¶ 9.

On January 6, 2021, FlagCo entered into an Asset Purchase Agreement ("APA") with Winstead and NYFO, in which NYFO sold to FlagCo the assets and properties NYFO used to conduct its then existing "Business" operating youth football activities in North Carolina. See id. at ¶ 10. On January 7, 2021, the transaction closed, and the APA included all goodwill associated with the business, its "Confidential Information," and all other rights and tangible or intangible properties or assets used in or relating to the operation of the business. See id. at ¶ 11. Under the APA, defendants agreed to express covenants including Non-Compete Covenants ("APA Non-

2

Compete"), Non-Solicitation Covenants ("APA Non-Solicitation"), and Confidentiality Covenants ("APA Confidentiality") (collectively "APA Covenants"). See id. at ¶ 14. Under the APA, defendants also agreed to change NYFO's name and all assumed names on or before January 17, 2021. See id. at ¶ 13.

The APA Non-Compete Covenants state that defendants would not directly or indirectly compete against the Business for a five-year period from the effective date of the APA. See id. at ¶ 15. The APA Non-Solicitation Covenants state that defendants, for five years, would not solicit or employ employees or other representatives of FlagCo, or solicit customers or other business relations of FlagCo that existed during the two years before the APA. See id. at ¶ 16. The APA Confidentiality Covenants state that defendants agreed, for five years, not to use any Confidential Information for their own account or for the benefit of any other person. See id. at ¶ 17.

As part of the APA, defendant Winstead terminated his employment with NYFO and entered into an Executive Employment Agreement ("Employment Agreement") with FlagCo, effective January 7, 2021. See id. at ¶ 20. The Employment Agreement designated Winstead as the district manager for FlagCo, meaning that Winstead was responsible for establishing and maintaining league infrastructure, procuring field space for practices and games, hiring coaches and referees, marketing the leagues, and onboarding new players. See id. at ¶¶ 21–22. The Employment Agreement required Winstead to devote his best efforts and substantially all of his active business time to the FlagCo business and not to engage in any outside business activity without prior written approval. See id. at ¶ 25. As part of the Employment Agreement, Winstead agreed to certain express covenants that largely mirrored the covenants in the APA, including Employment Non-Compete Covenants,

3

Employment Non-Solicitation Covenants, and Employment Confidentiality Covenants. See id. at ¶¶ 29–30.

FlagCo employed Winstead from January 7, 2021, until November 30, 2022. See id. at ¶ 34. "While employed with FlagCo, Winstead was FlagCo's top executive in North Carolina, responsible for operating youth football leagues, camps, tournaments, and related activities throughout the state." Id.

On November 3, 2022, Winstead emailed Todd Cadwallader of FlagCo and resigned. See id. at ¶ 35. Winstead blind copied several FlagCo employees, including FlagCo's top executives in Florida, Wisconsin, Arizona, and Texas. See id. at ¶ 36. Before emailing Cadwallader, Winstead told Cadwallader that he was aware of, but did not intend to honor, the Employment Covenants and APA Covenants. See id. at ¶ 37.

On February 3, 2023, FlagCo became aware that Winstead allegedly was competing with its Business by operating flag football leagues in North Carolina in violation of the APA and Employment Covenants. See id. at ¶ 38. According to FlagCo, Winstead's social media accounts indicate that as early as August 2, 2022, while still employed with FlagCo, Winstead was marketing and operating recreation youth football activities under the name "7 on 7 Football," which FlagCo calls the "Competitive Business." See id. at ¶¶ 38–40. As of April 4, 2023, FlagCo alleges that the 7 on 7 fb.com "website" was advertising spring leagues in multiple North Carolina locations for the spring 2023 season. See id. at ¶¶ 40–42. FlagCo has no association with 7 on 7 Football and never authorized Winstead's use of the website in association with FlagCo business activities. See id. at ¶ 43. FlagCo alleges that the 7 on 7 Facebook account, which on August 2, 2022, was providing registration access for customers to sign up for spring football leagues, was the same Facebook page

4

that Winstead used to advertise, market, and provide registration for Girdiron Football (i.e., the trade name that FlagCo used for its North Carolina business). See id. at ¶¶ 44–45. On October 19, 2022, Winstead used his personal Twitter account to advertise the 7 on 7 Football spring league for 2023 and said that NYFO was sponsoring the league. See id. at ¶¶ 47–48. FlagCo also alleges that Winstead is using two other twitter accounts, one labeled @ 7 on 7 Champ, and @NYFOCorporate, to advertise and market the 7 on 7 Football spring league and direct customers to the "website." See id. at ¶¶ 48–50. FlagCo alleges that Winstead is operating this Competitive Business in association with NYFO. See id. at ¶ 51.

FlagCo alleges that Winstead and NYFO are using the Confidential Information and assets purchased in the 2021 APA to solicit and divert FlagCo customers and prospective customers to the Competing Business. See id. at ¶ 54. FlagCo alleges that it cannot effectively advertise and operate its business in North Carolina due to defendants' conduct. See id. at ¶ 62. FlagCo seeks compensatory damages and injunctive relief. See id. at ¶¶ 18–20.

## II.

### A.

"The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a facial challenge to subject-matter jurisdiction, the court "effectively affords a plaintiff the same procedural protection as he would receive under a Rule 12(b)(6) consideration, taking the facts as true and denying the Rule 12(b)(1) motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Azima v. Nicholas Del Rosso & Vital Mgmt. Servs., Inc., No.

5

1:20CV954, 2022 WL 4537807, at *2 (M.D.N.C. Sept. 28, 2022) (unpublished) (quotation omitted); Kerns v. United States, 585 F.3d 187, 192–93 (4th Cir. 2009).

"[T]he procedural posture of the case dictates the plaintiff's burden as to standing." Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Id. (quotation omitted). "We do not, however, apply the same presumption of truth to conclusory statements and legal conclusions." Id. (quotation omitted).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [its] claims," Twombly,

6

550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

B.

To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992).

Winstead and NYFO argue that FlagCo has not suffered any concrete or particularized injury because FlagCo only alleges a "procedural violation" of contractual agreements. See [D.E. 9-1] 4–5; [D.E. 13] 3. They also argue that FlagCo's claims for injunctive relief fail because FlagCo only alleges an abstract possibility of future injury. See [D.E. 13] 4.

7

Accepted as true, the complaint plausibly alleges actual injury. Specifically, FlagCo plausibly alleges a concrete injury from the conversion of assets that FlagCo purchased, which defendants are now allegedly using to operate a competing business in violation of the APA. See Compl. ¶¶ 45, 50–62. FlagCo also plausibly alleges monetary harm. Taking FlagCo's contractually bargained-for assets and exclusive services constitutes injury in fact. Moreover, even if economic injury may not warrant injunctive relief, such economic injury still constitutes concrete injury. See, e.g., Southtech Orthopedics, Inc. v. Dingus, 428 F. Supp. 2d 410, 418 (E.D.N.C. 2006).

Next, defendants argue that any harm alleged is not traceable to them because FlagCo is not attempting to conduct business in North Carolina. See [D.E. 9-1] 5. In support, defendants urge the court to take judicial notice that FlagCo is not operating any leagues in North Carolina and that FlagCo has a poor Better Business Bureau rating stemming from FlagCo's reputation and not from defendants' actions. See [D.E. 9-1] 5–6.

The court declines defendants' invitation to take judicial notice of the alleged facts. The alleged facts are not "generally known within the . . . court's territorial jurisdiction" and they cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; see Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607–08 (4th Cir. 2015). Alternatively, even if the court took judicial notice of these alleged facts, the court still must construe the facts in the light most favorable to the plaintiff. See Zak, 780 F.3d at 607–08. Even if FlagCo had no leagues in operation in North Carolina when it filed suit, that fact would not sever traceability. Viewing the complaint in the light most favorable to FlagCo, FlagCo could not form leagues due to defendants' alleged actions. Thus, the court rejects defendants' traceability arguments.

8

Defendants also argue that FlagCo fails redressability because FlagCo seeks unavailable remedies. See [D.E. 9-1] 6. For a claim to be redressable, "a plaintiff must show that the court has the power to grant the plaintiff's requested relief, and that such relief would redress the plaintiff's injury." Buscemi v. Bell, 964 F.3d 252, 259 (4th Cir. 2020). When determining the scope of a court's remedial power, a court assumes that a claim has legal merit. See id.; White Tail Park, Inc. v. Stroube, 413 F.3d 451, 460–61 (4th Cir. 2005). Assuming that FlagCo's claims have merit, the court may award the requested damages and injunctive relief. See, e.g., GE Betz, Inc. v. Conrad, 231 N.C. App. 214, 222, 752 S.E.2d 634, 642 (2013); Southtech Orthopedics, Inc., 428 F. Supp. 2d at 418. Moreover, FlagCo's requested injunctive relief is not speculative. FlagCo alleges an ongoing violation of the APA and Employment Covenants. These allegations meet the imminency requirement. See, e.g., Lujan, 504 U.S. at 560.

As for the amount-in-controversy requirement required for diversity jurisdiction, "[c]ourts generally determine the amount in controversy by reference to the plaintiff's complaint." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010). If, however, "the court is satisfied to a legal certainty that the plaintiff never was entitled to recover that amount," then the plaintiff cannot secure diversity jurisdiction. Id. (cleaned up); see St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). Defendants attempt to show to a legal certainty that FlagCo cannot recover the required amount by arguing that FlagCo has failed to state a breach of fiduciary duty, constructive fraud, or UDTPA claim. See [D.E. 9-1] 7 (citing SAS Inst., Inc. v. World Programming Ltd., No. 5:10-CV-25, 2015 WL 5227801, at *1 (E.D.N.C. Sept. 8, 2015) (unpublished)).

The court rejects defendants' argument. First, that certain remedies pleaded may be unavailable for certain claims does not mean that FlagCo has no remedy at all. Cf. SAS Inst., Inc.,

9

2015 WL 5227801, at *1–2 (discussing which remedies are available for specific claims). Moreover, in assessing subject-matter jurisdiction, the court also does not consider arguments that FlagCo's claims fail as a matter of law. See, e.g., United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999) (noting that "[w]hen a factual attack on subject matter jurisdiction involves the merits of a dispute, the proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits" (cleaned up)). Furthermore, even if the court dismissed every claim except the breach of contract claims, the harm alleged from the breach of contract claims suffices to meet the amount-in-controversy requirement. Notably, a district court should not only consider the amount of monetary damages involved in the case, but also the value of the injunctive relief sought when determining jurisdiction. See Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 346–48 (1977); Glenwood Light & Water Co. v. Mut. Light, Heat & Power Co., 239 U.S. 121, 125–26 (1915); JTH Tax, Inc., 624 F.3d at 639. Here, the value of the monetary damages and injunctive relief plausibly exceeds $75,000. See, e.g., JTH Tax, Inc., 624 F.3d at 639–40. Thus, the court has subject-matter jurisdiction.

## C.

North Carolina law applies in this case. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). The court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In doing so, this

10

court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (cleaned up); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue that it has not yet resolved, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted).

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotation omitted); see Great Am. Emu Co. v. E.J. McKernan Co., 509 F. Supp. 3d 528, 536 (E.D.N.C. 2020). For a restrictive covenant arising from the sale of a business, a court will only enforce it "(1) if it is reasonably necessary to protect the legitimate interest of the purchaser; (2) if it is reasonable with respect to both time and territory; and (3) if it does not interfere with the interest of the public." Bev. Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC, 368 N.C. 693, 698, 784 S.E.2d 457, 461 (2016); see Jewel Box Stores Corp. v. Morrow, 272 N.C. 659, 662–63, 158 S.E.2d 840, 843 (1968).

For a restrictive covenant ancillary to an employment agreement, a court will only enforce it if it is "(1) in writing; (2) reasonable as to terms, time, and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." Triangle Leasing Co. v. McMahon, 327 N.C. 224, 228, 393 S.E.2d 854, 857 (1990). Covenants not to compete between an employer and employee are not viewed favorably in modern law. See Henley Paper Co. v. McAllister, 253 N.C. 529, 534, 117 S.E.2d 431, 434 (1960); Kadis v. Britt, 224 N.C.

11

154, 159–60, 29 S.E.2d 543, 546 (1944); Farr Assocs., Inc. v. Baskin, 138 N.C. App. 276, 279, 530 S.E.2d 878, 881 (2000); Hartman v. W.H. Odell and Assocs., Inc., 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994). Courts evaluate non-solicitation agreements using the same elements, but courts are more willing to enforce non-solicitation agreements targeted at former customers than agreements prohibiting employment in certain businesses or regions. See, e.g., Sandhills Home Care, L.L.C. v. Companion Home Care-Unimed, Inc., No. 15 CVS 3329, 2016 WL 4164460, at *8 (N.C. Super. Ct. Aug. 1, 2016) (unpublished) (collecting cases).

"The reasonableness of a noncompetition covenant is a matter of law for the court to decide." Hartman, 117 N.C. App. at 311, 450 S.E.2d at 916 (quotation omitted); see Beasley v. Banks, 90 N.C. App. 458, 460, 368 S.E.2d 885, 886 (1998). Applying Rule 12(b)(6), the court determines whether it appears certain that plaintiff can prove no set of facts which would establish the reasonableness of the disputed restrictive covenants. See Static Control Components, Inc. v. Darkprint Imaging, Inc., 135 F. Supp. 2d 722, 729 (M.D.N.C. 2001). Moreover, when enforceability of restrictive agreements appears to straddle the line between the employer-employee or the business sale category, "North Carolina appellate courts have engaged in a detailed analysis of the reasonableness of the restrictions to which the plaintiff seeks to have the defendant[s] subjected" rather than focusing on which side of the line each agreement falls. Outdoor Lighting Perspectives Franchising, Inc. v. Harders, 228 N.C. App. 613, 621, 747 S.E.2d 256, 262–63 (2013).

In determining whether the time and geographic scope of a covenant is reasonable, courts look to "(1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his

12

knowledge of the employer's business operation." Hartman, 117 N.C. App. at 312, 450 S.E.2d at 917 (quotation omitted). The scope of the restriction must not be any wider than necessary to protect the employer's reasonable business interests. See Okuma Am. Corp. v. Bowers, 181 N.C. App. 85, 89, 638 S.E.2d 617, 620 (2007); Precision Walls, Inc. v. Servie, 152 N.C. App. 630, 638, 568 S.E.2d 267, 273 (2002); Manpower of Guilford Cnty., Inc. v. Hedgecock, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979). These reasonableness determinations apply to both sale of business covenants and employer-employee covenants.

Reasonableness as to time has a more definitive standard in the employer-employee context. "A five-year time restriction is the outer boundary which [North Carolina] courts have considered reasonable, and even so, five-year restrictions are not favored." Farr Assocs., Inc., 138 N.C. App. at 280, 530 S.E.2d at 88; see Hartman, 117 N.C. App. at 315, 450 S.E.2d at 918 (holding that "only extreme conditions" will support a five-year non-compete agreement (quotation omitted)). Furthermore, when a restrictive covenant reaches back to include clients or relationships during a period before the agreement, a court must add that look back period to the restrictive period to determine the real scope of the time limitation. See Hartman, 117 N.C. App. at 315, 450 S.E.2d at 918; Pro. Liab. Consultants, Inc. v. Todd, 345 N.C. 176, 478 S.E.2d 201 (1996) (per curiam) (adopting dissenting opinion of Smith, J., in 122 N.C. App. 212, 468 S.E.2d 578 (1996)). Historically, North Carolina law has recognized that non-compete covenants that accompany the sale of a trade or business can contain time limitations of ten, fifteen, and twenty years, as well as limitations for the life of one of the parties, but these longer time limitations normally accompany tighter geographic scopes or narrower definitions of competing business. See, e.g., Jewel Box Stores Corp., 272 N.C. at 663–64, 158 S.E.2d at 843–44.

13

As for the APA Covenants, defendants argue that the terms of the APA Non-Compete and Non-Solicitation Covenants are so broad that they preclude activities unrelated to protecting FlagCo's legitimate interest and are unreasonable as a matter of law. See [D.E. 9-1] 10–11. The timeframe of the APA Covenants is five years. See Compl. ¶¶ 15–16. According to defendants, this timeframe approaches the outer limit of acceptable timeframes for restrictive covenants under North Carolina law. See, e.g., Hartman, 117 N.C. App. at 315, 450 S.E.2d at 918. FlagCo responds that North Carolina courts enforce non-compete timeframes of ten, fifteen, and twenty years or more when associated with the sale of a trade or business. See [D.E. 10] 18; Seadboard Indus., Inc. v. Blair, 10 N.C. App 323, 335, 178 S.E.2d 781, 788 (1971).

North Carolina permits the longer timeframes for sale of business non-competes primarily in circumstances where the territory of the non-compete and the scope of activities prohibited are narrowly tailored. See, e.g., Jewel Box Stores Corp., 272 N.C. at 663–64, 158 S.E.2d at 883–84. Furthermore, even if the timeframe of a sale of business non-compete exceeds five years, the scope of activities prevented must be constrained to plaintiff's legitimate business interests. See Manpower of Guilford Cnty., 42 N.C. App. at 523, 257 S.E.2d at 115.

Clauses (i) and (ii) of the APA Non-Compete appear quite expansive. See Compl. ¶ 15.[1] For a period of five years, the Non-Compete prevents defendants from "engag[ing] in any capacity in any business that is the same as, or similar to, or competitive with the Business in the State of North

---

[1] FlagCo did not attach copies of the agreements to its complaint and defendants did not attach copies of the agreements to their motion to dismiss. FlagCo subsequently attached the agreements to its memorandum in support of its motion to dismiss Winstead's counterclaims. See [D.E. 27-1]. The court considers the agreements because the agreements are "explicitly incorporated into the complaint by reference[,] . . . [are] integral to the complaint[,] and there is no dispute about the [agreements'] authenticity." Goines, 822 F.3d at 165.

Carolina" and prohibits them from becoming "among other things, a member, owner, salesperson, partner, trustee, employee, agent, representative, distributor, supplier, consultant or advisor of or to, or otherwise acquire of hold any interest in, any Person that engages, directly or indirectly in a business that is the same as, similar to or competitive with the Business in [North Carolina]." Id. The APA Non-Solicitation Covenants also have a five-year period and prevent defendants from soliciting, inducing, or attempting to solicit or induce any level of FlagCo employees or "other representatives" to discontinue their relationship with FlagCo or to hire such a person. Id. at ¶ 16(i). The second clause of the Non-Solicitation Covenant prevents similar solicitation of "any customer, league participant, client, consultant, independent contractor, distributor, representative, licensor, licensee, supplier or other business relation of the Business occurring during the (2) years prior to entering into the APA." Id. at ¶ 16(ii). This clause apparently contains a seven-year time restriction (i.e., a five-year restriction plus the two-year look back). See id.

Defendants argue that these provisions are unenforceable as a matter of law because they are not sufficiently tailored to protect FlagCo's legitimate business interests. See [D.E. 9-1] 10. FlagCo responds that the complaint does not contain all details concerning its business interests in North Carolina that would substantiate its legitimate interest in the scope of business activities presented. See [D.E. 10] 18–19.

As for the Employment Covenants, the covenants allegedly prevent Winstead from "engag[ing], in any capacity in any business which is the same as, similar to, or competitive with the Business." Compl. ¶ 30(i). The covenants do not allow Winstead to "own, manage, control or participate in the ownership, management or control of, or render services directly or indirectly related to, any Person engaged in the Business or any other activities that compete with FlagCo."

15

Id. at ¶ 30(ii). Moreover, unlike the APA Covenants, the Employment Covenants appear to not contain a geographic restriction. See id. at ¶ 30; cf. Clinical Staffing, Inc. v. Worldwide Travel Staffing Ltd., 60 F. Supp. 3d 618, 625 (E.D.N.C. 2013). Generally, "[w]here the alleged primary concern is the employee's knowledge of the customers, the territory should only be limited to areas in which the employee made contacts during the period of his employment." Hartman, 117 N.C. App. at 313, 450 S.E.2d at 917 (quotation omitted); see Sterling Title Co. v. Martin, 266 N.C. App. 593, 598, 831 S.E.2d 627, 632 (2019). North Carolina law does not readily permit an employer to use a covenant not to compete to prevent an employee from working for a competitor in any capacity. See Clinical Staffing, Inc., 60 F. Supp. 3d at 624; Henley Paper Co., 253 N.C. at 531–35, 117 S.E.2d at 432–34; Hejl v. Hood, Hargett & Assocs., Inc., 196 N.C. App. 299, 306–07, 674 S.E.2d 425, 430 (2009); VisionAIR, Inc. v. James, 167 N.C. App. 504, 508–09, 606 S.E.2d 359, 362–63 (2004); Hartman, 117 N.C. App. at 317, 450 S.E.2d at 920; Elec. S., Inc. v. Lewis, 96 N.C. App. 160, 166–68, 385 S.E.2d 352, 356–57 (1989).

FlagCo defends the reasonableness of the Employment Covenants and argues that the complaint lacks sufficient detail for the court to analyze the Hartman factors and that FlagCo has a legitimate business interest in protecting against the misappropriation of its customer relations. See [D.E. 10] 19. At this stage of the case, the court is not certain that FlagCo can prove no set of facts which would establish the reasonableness of the disputed restrictive covenants. See, e.g., ACS Partners, LLC v. Americon Grp., Inc., No. 3:09cv464, 2010 WL 883663, at *5–7 (W.D.N.C. Mar. 5, 2010) (unpublished); Static Control Components, Inc., 135 F. Supp. 2d at 729–30. Notably, the court lacks a full understanding of FlagCo's legitimate business interests in North Carolina and sufficient information to assess the scope of Winstead's customer contacts and duties with FlagCo.

Thus, the court denies defendants' motion to dismiss the breach of contract claims.

As for FlagCo's breach of fiduciary duty claim, a breach of fiduciary duty claim requires a fiduciary relationship between the parties. See Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001); Curl v. Key, 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984). North Carolina law requires a relationship in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . and it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other." Dalton, 353 N.C. at 651, 548 S.E.2d at 707–08 (cleaned up); see Abbitt v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). "However, the broad parameters accorded the term have been specifically limited in the context of employment situations." Dalton, 353 N.C. at 651, 548 S.E.2d at 708. Generally, "the relation of employer and employ[ee] is not one of those regarded as confidential." King v. Atl. Coast Line R.R., 157 N.C. 44, 72 S.E. 801, 808 (1911); see Hiatt v. Burlington Indus., Inc., 55 N.C. App. 523, 529, 286 S.E.2d 566, 569, disc. rev. denied, 305 N.C. 395, 290 S.E.2d 365 (1982).

As for FlagCo's constructive fraud claim, a party must plausibly allege circumstances that (1) created a fiduciary relationship, (2) which led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust. See Terry v. Terry, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981); Keener Lumber Co. v. Perry, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (2002).

The economic loss rule addresses the intersection between contract remedies (including warranty remedies) and tort remedies. See Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 791

(E.D.N.C. 2009). "Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978), rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230, 328 S.E.2d 274 (1985); Braswell Egg Co. v. Poultry Mgmt. Sys., Inc., 481 F. Supp. 3d 528, 542 (E.D.N.C. 2020); Gen. Cas. Co. of Wis. v. Murphy-Hoffman Co., No. 5:20-CV-376, 2020 WL 6173547, at *2 (E.D.N.C. Oct. 21, 2020) (unpublished); CDI Corp. v. HCL Am., Inc., No. 5:17-CV-550, 2019 WL 1083775, at *3 (E.D.N.C. Mar. 7, 2019) (unpublished); Wilkins v. Wachovia Corp., No. 5:10-CV-249, 2011 WL 1134706, at *2 (E.D.N.C. Mar. 24, 2011) (unpublished). The economic loss rule arises because "parties to a contract do not thereby become each others' fiduciaries; therefore, they generally owe no special duty to one another beyond the terms of the contract." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (cleaned up); see Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992).

To pursue a tort claim and a breach of contract claim concerning the same conduct, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." Kelly, 671 F. Supp. 2d at 791 (quotation omitted); see Broussard, 155 F.3d at 346; Strum v. Exxon Co., 15 F.3d 327, 330–31 (4th Cir. 1994); Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362 (W.D.N.C. 1997); Paine, Webber, Jackson & Curtis, Inc. v. Stanley, 60 N.C. App. 511, 516–17, 299 S.E.2d 292, 295–96 (1983). North Carolina courts have "carefully circumscribed" this independent duty requirement. Strum, 15 F.3d at 331. In so doing, North Carolina courts have strived to keep tort and contract law within their separate spheres. Cf. E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986). Accordingly, North

18

Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk. See, e.g., 2000 Watermark Ass'n v. Celotex Corp., 784 F.2d 1183, 1186 (1986) (applying South Carolina law); Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 753–54 (E.D.N.C. 2002) (applying North Carolina law); Oates v. JAG, Inc., 314 N.C. 276, 277, 333 S.E.2d 222, 223–24 (1985); N.C. State Ports Auth., 294 N.C. at 81, 240 S.E.2d at 350. A loss falls into this rule when the only alleged damage or injury is to the product itself and not to any person or separate property. See B & B Crane Serv., LLC v. Dragados USA, Inc., No. 7:19-CV-98, 2019 WL 5295731, at *4 (E.D.N.C. Oct. 18, 2019) (unpublished); Kelly, 671 F. Supp. 2d at 791; Wilson, 206 F. Supp. 2d at 753.

Defendants argue that FlagCo does not plausibly allege that Winstead was in any position of "domination and influence" over FlagCo. See [D.E.9-1] 15. FlagCo responds that because Winstead was an executive for FlagCo in North Carolina, he was in a position of trust and had a fiduciary duty to safeguard FlagCo's customer relationships and intellectual property. See [D.E. 10] 22; Compl. ¶ 28.

FlagCo has not plausibly alleged a fiduciary duty that would enable FlagCo to maintain a tort claim separate from its breach of contract claims. Managerial duties which carry with them certain levels of confidentiality and responsibility "merely serve to define the nature of virtually all employer-employee relationships" and "without more, they are inadequate to establish [defendant's] obligations as fiduciary in nature." Dalton, 353 N.C. at 652, 548 S.E.2d at 708. As in Dalton, FlagCo has not plausibly alleged that Winstead exercised domination and influence or that such a relationship predated the initial contractual agreement. See id.; Keener Lumber Co., 149 N.C. App

at 28, 560 S.E.2d at 823. FlagCo's claims arise out of the performance and alleged breach of contractual obligations, and FlagCo has failed to plausibly allege tort claims that would enable FlagCo to avoid the economic loss rule. See, e.g., ACS Partners, LLC, 2010 WL 883663, at *7–8. Thus, the court dismisses FlagCo's breach of fiduciary duty and constructive fraud claims.

As for FlagCo's unfair and deceptive trade practices claim, the UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). To state an unfair and deceptive trade practices claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. See Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); Kelly, 671 F. Supp. 2d at798; SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (cleaned up). A plaintiff need not "show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (cleaned up); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981). However, a "mere breach of contract, even if intentional, is not an unfair or deceptive act." Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019) (collecting cases); see PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Respess v. Crop Prod.

Servs., Inc., No. 4:15-CV-176, 2016 WL 3821163, at *5 (E.D.N.C. July 13, 2016) (unpublished); SciGrip, 373 N.C. at 427, 838 S.E.2d at 347; Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); Mitchell v. Linville, 148 N.C. App. 71, 74–75, 557 S.E.2d 620, 623–24 (2001); Branch Banking & Tr. Co., 107 N.C. App. at 61–62, 418 S.E.2d at 700.

North Carolina law "does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim . . . because awarding punitive or treble damages would destroy the parties' bargain." PCS Phosphate, 559 F.3d at 224; see Broussard, 155 F.3d at 347 (collecting cases). If, however, substantial aggravating circumstances accompany a breach of contract, then those circumstances can create a UDTPA claim. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981); Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700. Generally, substantial aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements. See Stack v. Abbott Lab'ys, Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013); Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (unpublished).

FlagCo plausibly alleges breach of contract claims but does not plausibly allege aggravating circumstances. Furthermore, that FlagCo alleges that Winstead directly informed it of his awareness of the contract and his intention to not abide by the covenants belies any argument that he deceived FlagCo concerning his alleged contractual breach. See Compl. ¶ 37. Thus, the court dismisses FlagCo's unfair and deceptive trade practices claim.

21

III.

In sum, the court DENIES defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) and GRANTS IN PART defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). The court DISMISSES WITHOUT PREJUDICE plaintiff's breach of fiduciary duty, constructive fraud, and unfair and deceptive trade practice claims.

SO ORDERED. This _3_ day of November, 2023.

JAMES C. DEVER III
United States District Judge